39 F.3d 864
 63 USLW 2303
 ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Appellee,
v.
MALONE FREIGHT LINES, INC.; Quantum Services, Inc., Appellants.
Tammy HIBSHMAN, as personal representative of the Estate of
Brian Hibshman, deceased, Appellant,
v.
ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, doing business as
Cottonbelt Line, Appellee.
 No. 94-1136.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 15, 1994.
Decided Nov. 4, 1994.
 
 Stan M. Herkelman, Cedar Rapids, IA, argued, for Malone & Quantum, et al.
 Wm. David Duke, Little Rock, AR, argued (Robert E. Konchar and Michael McDonough, on the brief), for T. Hibshman.
 D.P. Marshall, Jonesboro, AR, argued (J.C. Deacon and Barry Deacon, on the brief), for appellee.
 Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.
 FAGG, Circuit Judge.
 
 
 1
 On July 20, 1991, Brian Hibshman's tractor-trailer collided with a St. Louis Southwestern Railway train at a train crossing on an Arkansas highway. Mr. Hibshman was killed and his widow, Tammy Hibshman, brought a wrongful death action against the Railway. The Railway sued the tractor's lessee, Malone Freight Lines, Inc., and the tractor's owner, Quantum Services, Inc., for damages to the derailed train and dislocated track. After the two cases were consolidated for trial, the Railway moved for summary judgment on the opposing parties' claims that the Railway was negligent in failing to provide adequate warning devices at the crossing and in failing to use reasonable diligence in implementing a federally approved upgrade plan at the crossing. The Railway argued these state common-law claims were preempted by a federal grade crossing regulation, 23 C.F.R. Sec. 646.214(b)(3)-(4) (1993), issued by the Federal Highway Administration (FHA) under the Federal Railroad Safety Act of 1970 (FRSA), 45 U.S.C. Secs. 421-447 (1988 & Supp. IV 1992), and the Highway Safety Act of 1973, 23 U.S.C. Secs. 101-160 (1988 & Supp. V 1993). The district court granted the Railway's motion, holding the negligence claims were preempted under 23 C.F.R. Sec. 646.214(b)(3)-(4). Mrs. Hibshman, Malone, and Quantum (collectively the appellants) appeal. We reverse and remand.
 
 
 2
 As the parties recognize, this case is governed by the Supreme Court's decision in CSX Transportation, Inc. v. Easterwood, --- U.S. ----, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Like our case, Easterwood arose from a fatal accident involving a train and a truck at a railroad crossing. See id. at ----, 113 S.Ct. at 1736. The Supreme Court held federal law did not preempt the plaintiff's state common-law claim that the railroad was negligent in failing to maintain adequate warning devices at the crossing. Id. The Court explained that federal regulations preempt a railroad's state common-law duties when the regulations cover the same subject matter as the plaintiff's state claim. Id. at ----, 113 S.Ct. at 1737-38. After rejecting other alleged sources of preemption, the Court considered whether a state inadequate warning device claim could be preempted by 23 C.F.R. Sec. 646.214(b)(3)-(4). Easterwood, --- U.S. at ----, 113 S.Ct. at 1740. This regulation names the devices that must be installed when federal funds participate in the installation of warning devices at a railroad crossing. Id. at ----, 113 S.Ct. at 1741. The Court decided preemption can occur under 23 C.F.R. Sec. 646.214(b)(3)-(4) if federal funds participate in the installation of warning devices at a crossing. Easterwood, --- U.S. at ----, 113 S.Ct. at 1741.
 
 
 3
 In Easterwood, the Court held federal funds did not participate in the installation of warning devices at the crossing where the accident occurred, even though the state Department of Transportation planned to install a crossing gate, federal funds were set aside for the plan, and motion-detection circuitry necessary for the gate's operation was installed. Id. Because the city declined to approve a necessary street project, the gate was placed on a list of projects to be considered later and federal funds set aside for the gate were reallocated. Id. at ---- - ----, 113 S.Ct. at 1741-42. The Supreme Court held the facts did "not establish that federal funds 'participate[d] in the installation of the [warning] devices' at [the crossing]. The only equipment installed was the motion-detection circuitry. Such circuitry does not meet the definition of warning devices provided in 23 C.F.R. Sec. 646.204(i) and (j) (1992)." Easterwood, --- U.S. at ----, 113 S.Ct. at 1741 (quoting 23 C.F.R. Sec. 646.214(b)(3)(i)) (footnote omitted).
 
 
 4
 To decide whether the appellants' inadequate warning device claims are preempted under Easterwood, we must decide whether federal funds participated in the installation of a warning device at the crossing before Mr. Hibshman's accident. The parties do not dispute the facts bearing on this issue.
 
 
 5
 In the summer of 1989, the Arkansas Highway and Transportation Department (AHTD) inspected the train crossing and decided the eight-inch lenses on the existing flashing light signals should be replaced with twelve-inch lenses, and automatic crossing gates should be added. At the AHTD's request, the Railway installed the larger lenses within a week. The AHTD requested a preliminary engineering report and plan from the Railway, and the Railway submitted a plan several months later. After approving the plan, the state submitted it to the FHA for review. The FHA approved the plan in late June 1990. The next month, the AHTD issued a work order authorizing the Railway to proceed with installation. About a year later, the Railway began construction. Four days after construction began, Mr. Hibshman was killed at the crossing. Two other accidents occurred at the crossing before the Railway installed the gates in October 1991, about fifteen months after receiving the work order. The FHA later reimbursed the AHTD with federal funds for the AHTD's payments to the Railway for the larger lenses, engineering work, and the gates' construction and installation.
 
 
 6
 The district court held the inadequate warning device claims were preempted by 23 C.F.R. Sec. 646.214(b)(3)-(4) when the FHA approved the upgrade plan in June 1990. In the district court's view, FHA approval of the plan constituted participation of federal funds in the installation of a warning device at the train crossing within the regulation's meaning. It was significant to the district court that a work order was issued before the accident and that, more than a year later, the gates were installed and federal funds were paid. On appeal, the appellants contend federal funds did not participate in the gates' installation until after the accident, when the gates were actually installed. We agree.
 
 
 7
 The view that federal funds participate in installation when the FHA approves upgrade plans is contrary to Easterwood. Before the accident in Easterwood, federal funds had been allocated for the gate, and thus, the FHA had approved the upgrade plan. See 23 C.F.R. Sec. 646.216(e) (1993). Rather than looking to federal approval or fund allocation as triggering preemption, the Supreme Court focused on the equipment installed at the crossing. Because the only equipment installed was circuitry, which was not a passive or active warning device as defined in 23 C.F.R. Sec. 646.204(i)-(j), the Court held the claim was not preempted. Easterwood, --- U.S. ---- - ----, 113 S.Ct. at 1741-42.
 
 
 8
 The Railway cites some district court cases and one court of appeals case in support of its view that the appellants' inadequate warning device claims are preempted. These cases are either factually distinguishable or contrary to Easterwood. E.g., Hatfield v. Burlington No. R.R. Co., 1 F.3d 1071, 1072 (10th Cir.1993) (remanding for findings on whether, when, and how federal funds were committed to project), on remand, 848 F.Supp. 158, 159 (D.Kan.1994) (claim preempted because FHA authorized preliminary engineering and promised funding before accident). The Railway also argues Easterwood is distinguishable because the plan to install the gate was shelved for later consideration in Easterwood, and in this case, the gates' installation was "certain." According to the Railway, Easterwood means preemption occurs when federal approval is granted, as long as the approval is eventually followed by installation and federal payment. In other words, the decisive act is installation, but then preemption is retroactive to the time of federal approval. We disagree with this interpretation.
 
 
 9
 The view that preemption runs from the time of federal approval is inconsistent with the FRSA's goal of promoting safety at railroad crossings. See Easterwood, --- U.S. at ----, 113 S.Ct. at 1736. Before preemption, the public is protected by a railroad's state common-law duty of care. After installation of federally mandated warning devices, the public is protected by those devices. A plan to install devices and federal approval of a plan do not protect the public, however. The Railway's interpretation that federal approval triggers preemption would leave the public unprotected between the time of approval and the time the prescribed devices are installed and operating. This can be a substantial period of time. In this case, it was fifteen months. To encourage prompt installation of federally prescribed warning devices, a railroad's common-law duty of care must continue until those devices are installed.
 
 
 10
 Under Easterwood, the regulations, and the public safety policy behind the FRSA, we hold preemption occurs when all the devices prescribed in the FHA-approved upgrade plan are installed and operating. See Earwood v. Norfolk So. Ry. Co., 845 F.Supp. 880, 886-87 (N.D.Ga.1993) (inadequate warning device claims are preempted by installation of devices, not by federal planning, prioritization, and contracting on project); Carpenter v. Consolidated Rail Corp., 69 Ohio St.3d 259, 631 N.E.2d 607, 610 (1994) (preemption occurs when federal funds have actually been committed and spent, and warning devices have been installed). Thus, although the larger flasher lenses were installed before Mr. Hibshman's accident, preemption would not have occurred until after the accident when the gates were installed and operating. Also, like the circuitry installed in Easterwood, we do not believe the exchange of a single component part of the lights in place before the upgrade was the installation of a warning device defined in 23 C.F.R. Sec. 646.204(i)-(j).
 
 
 11
 The district court was concerned that if installation triggered preemption, then the Railway would be devastated at trial with evidence about the AHTD's crossing risk evaluations, the planned upgrade, and the federally prescribed devices. This concern overlooks 23 U.S.C. Sec. 409 (1988), however. As we recently explained, this statute prohibits admission of " 'reports, surveys, schedules, lists, or data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of ... railway-highway crossings [under 23 U.S.C. Sec. 130].' " Lusby v. Union Pac. R.R. Co., 4 F.3d 639, 641 (8th Cir.1993) (quoting 23 U.S.C. Sec. 409). Under Sec. 409, the evidence presented at trial should be the same as if no upgrades had been planned. Without hearing the prohibited evidence, the jury will have to decide whether the crossing, as it existed at the time of the accident, was abnormally dangerous under Arkansas law.
 
 
 12
 We conclude the appellants' inadequate warning device claims are not preempted. Thus, as the appellants state in their reply brief, we need not consider their argument about their claim that the Railway failed to use reasonable diligence in implementing the upgrade plan. We reverse the district court's grant of summary judgment to the Railway and remand the state common-law inadequate warning device claims for further proceedings.