**Oreatha POWERS, etc., Plaintiff,**

**v.**

**CSX TRANSPORTATION, INC., et al., Defendants.**

**No. Civ.A. 99–0326–RVS.**

United States District Court, S.D. Alabama, Southern Division.

July 16, 2001.

Charles R. Godwin, Timothy J. Godwin, Atmore, AL, for plaintiff.

Brian P. McCarthy, Jerry A. McDowell, Todd Preston Resavage, McDowell Knight Roedder & Sledge, L.L.C., Lawrence M. Wettermark, Thomas O. Gaillard, III, Galloway, Smith, Wettermark & Everest, LLP, Mobile, AL, Jim R. Ippolito, Jr., Gilda Branch Williams, T. Dudley Perry, Jr., Robert M. Alton, III, Department of Transportation, State of Alabama, Legal Division, Montgomery, AL, for defendants.

## ORDER

VOLLMER, Senior District Judge.

This matter is before the Court on various motions for protective order and motions to compel. This order addresses the contentions of the defendants that most of the plaintiff's requested discovery is barred by 23 U.S.C. section 409. All other issues are resolved in a companion order.

## BACKGROUND

For the purposes of this order, sufficient background is provided in the Court's previous order on motion to reconsider. *See Powers v. CSX Transportation, Inc.*, 97 F.Supp.2d 1297, 1298–1300 (S.D.Ala.2000).

## DISCUSSION

Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

23 U.S.C. Section 409. Section 409 has engendered some confusion in the courts, thanks to its unwieldy language and the absence of any significant legislative history. Its scope is obviously broad, but it is not all-encompassing.[1]

---

1. The Court agrees that Section 409 extends to otherwise protected information compiled or collected by railroads just as it does to information compiled or collected by state agencies. The passive voice utilized by the statute is broad enough to encompass railroads, and the railroads' significant role in identifying and correcting rail crossing hazards, recognized by statute and regulation, is sufficient to demonstrate Congress's intent that railroads be protected. *See also Taylor v. St Louis Southwestern Railway Co.*, 746 F.Supp. 50, 54 (D.Kan.1990); *Rothermel v. Consolidated Rail Corp.*, 1998 WL 110010 at *4 (Del.Super.1998); *Fry v. Southern Pacific Transportation Co.*, 715 So.2d 632, 637 (La. App.1998).

■ As a threshold requirement, the information protected by Section 409 must be in the form of "reports, surveys, schedules, lists or data," and such information must have been "compiled or collected." For example, the defendants have previously disclosed in this litigation a letter dated November 29, 1995 from defendant Dykes Rushing to CSX's director of construction/public projects, which "letter is your authority to proceed with the work and to bill the State for actual cost as provided for in the agreement." (Doc. 25, Exhibit 7). This letter, on which the plaintiff apparently relies to "start the clock" on her negligent delay claim, neither is nor contains any "reports, surveys, schedules [or] lists." [2] While the letter may constitute "data" in the sense that it includes information (the fact and date of authorization to proceed),[3] it is not data "compiled or collected" but is data created by ADOT itself. Thus, the letter falls outside the protection of Section 409. *Cf. Shanklin v. Norfolk Southern Railway Co.,* 173 F.3d 386, 397 (6th Cir.1999) (Secretary's approval of proposed passive warning devices does not fall within Section 409), *rev'd on other grounds,* 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000).

■ Once it is shown that information is in the form of a report, survey, schedule, list or data and that the information was compiled or collected, it must next be shown that the information was compiled or collected for certain, statutorily specified purposes. The Court agrees with those authorities holding that Section 409 does not require that the sole purpose for compilation or collection be one specified in the statute. *E.g., Robertson v. Union*

*Pacific Railroad Co.,* 954 F.2d 1433, 1435 n. 3 (8th Cir.1992). The Court disagrees with those authorities suggesting that a statutorily specified purpose must be, if not the sole cause, at least the "but for" cause of compilation or collection. *E.g., Kitts v. Norfolk & Western Railway Co.,* 152 F.R.D. 78, 81 (S.D.W.Va.1993). Nevertheless, there must be some threshold level of causal connection between purpose and compilation or collection.

The purposes for which information must have been compiled or collected are limited to those of "identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130,144 and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds." Thus, the "identification" and "evaluation" of potential accident sites, including railway-highway crossings, is a protected purpose; information compiled or collected to ascertain, for example, the absolute and relative dangerousness of a rail crossing (such as vehicle counts and accident histories) and the conditions that contribute to its dangerousness (such as track configuration and signage), presumably satisfy this purpose.

The remaining terms, "planning the safety enhancement" of crossings and "developing any highway safety construction improvement project," clearly encompass the process of determining what improvements to make and formulating a project to make the improvements. Thus, infor-

---

**2.** While certain attachments to the letter may fall within these categories, the letter itself does not.

**3.** It is far from clear that Congress used the term "data" in such a generic, universal sense. "It is intended that raw data collected

*prior to being made part of any formal or bound report"* shall not be discoverable, admissible in evidence or used for other purposes in litigation. H.R.Rep. No. 104–246, at 59 (1995), *reprinted in* 1995 U.S.C.C.A.N. 522, 551 (emphasis added).

mation compiled or collected for the purpose of devising a plan or project to rectify a perceived deficiency (such as the pros and cons of various corrective options) presumably would satisfy this purpose.

More problematic is information compiled or collected, not to "plan" or "develop" a project, but to implement it. That the former terms do not encompass the latter is suggested by the language of Section 409 itself, which uses all three terms in describing highway safety construction improvement projects. The conclusion is confirmed by various other provisions of Title 23 that treat development and implementation of a project as separate, sequential stages. *See* 23 U.S.C. Section 152(a)(2)(B) (each state may "develop and implement projects and programs to address the hazards" disclosed by its survey); *id.* Section 502(f)(1) (Secretary is to establish a program to study the vulnerability of surface transportation systems to seismic activity and "to develop and implement cost-effective methods to reduce such vulnerability"). Other recent transportation statutes have employed the same "development and implementation" dichotomy. *See* 23 U.S.C. Section 143(f)(2), *repealed by* Pub.L. 105–178 Section 1114(a) (1998); Pub.Law 105–178 Section 1221(a) (1998); *id.* Section 1309(a)(1), *as amended by* Pub.Law 105–206, Title IX, Section 9004(c); Pub.Law 102–240, Title I, Section 1072 (1991); *id.* Section 1051. The Secretary's regulations similarly categorize "planning" as preliminary work separate from "implementation" of the planned projects. 23 C.F.R. Section 924.9–.11.

Defendant CSX Transportation, Inc. ("CSX")[4] suggests that information compiled or collected for the purpose of implementing a project must be protected because Section 409 references 23 U.S.C.

Section 130, which provides federal funding for the "construction of projects" to eliminate rail crossing hazards. *See* 23 U.S.C. Section 130(a). However, as its text makes plain, Section 409 references Section 130 only to specify the types of "identifying evaluating, or planning" activities that are protected by Section 409, that is, those undertaken with respect to rail crossings as required by Section 130(d). Section 409 very plainly does not incorporate "construction" as a protected purpose.

Thus, information compiled or collected for the purpose of implementing a highway safety improvement project falls outside Section 409. The Court recognizes that information compiled or collected after implementation of a project begins may nevertheless be gathered for the purpose of revising the plan or project rather than for implementation. The "design change" referenced in the plaintiff's discovery requests, for example, may fall into this category.

Finally, Section 409 shields from disclosure otherwise protected information only if the lawsuit concerns "a location mentioned in such reports, surveys, schedules, lists, or data." Section 409 does not protect, for example, general industry information concerning different sorts of safety hazards that do not "mention" a crossing in issue, which in this case encompasses the several CSX crossings within the city of Atmore, Alabama. This limitation appears of particular significance to requests 9 and 10 of the plaintiff's second 30(b)(5) and (6) notice to CSX.

■■■ To this point, the Court has addressed only information contained in documents. It is well settled that a plaintiff may not circumvent Section 409 by asking

---

4. Although the defendants Alabama Department of Transportation ("ADOT") and City of Atmore ("the City") both assert Section 409, only CSX has provided any briefing in support of its applicability.

a witness to testify to matters the witness learned from documents protected by Section 409. *E.g., Bowman v. Norfolk Southern Railway Co.,* 1995 WL 550079 at *6 (4th Cir.1995); *Harrison v. Burlington Northern Railroad Co.,* 965 F.2d 155, 160 (7th Cir.1992); *Robertson v. Union Pacific Railroad,* 954 F.2d at 1435; *Shots v. CSX Transportation, Inc.,* 887 F.Supp. 204, 206 (S.D.Ind.1995). On the other hand, knowledge gained by the witness independently of material protected by Section 409 is not protected. *E.g., Rodenbeck v. Norfolk & Western Railway Co.,* 982 F.Supp. 620, 625 (N.D.Ind.1997); *Palacios v. Louisiana & Delta Railroad Inc.,* 740 So.2d 95, 102 (La.1999).[5]

In summary, the Court concludes that Section 409 does not protect information that does not constitute "data" or a more structured version of data, that is not "compiled or collected," that is compiled or collected for a purpose other than those set forth in the statute (which excludes from protection information compiled or collected for the purpose of implementing a project), or which does not mention the site or sites at issue. Nor does Section 409 protect information obtained by a witness independently of materials protected by Section 409.

CSX quotes *St. Louis Southwestern Railway Co. v. Malone Freight Lines, Inc.,* 39 F.3d 864 (8th Cir.1994), for the proposition that, "[u]nder Section 409, the evidence presented at trial should be the same as if no upgrades had been planned."

*Id.* at 867. In *Malone Freight,* however, the Court considered only a claim of "fail[ure] to provide adequate warning devices," and the information the plaintiff sought to introduce concerned "crossing risk evaluations, the planned upgrade, and the federally prescribed devices." *Id.* at 865, 867.[6] The *Malone Freight* Court did not purport to lay down an absolute rule that Section 409 always excludes all evidence concerning grade crossing improvements but at most construed the particular evidence offered by the plaintiff, as related to the particular claim advanced. To the extent *Malone Freight* can be read as laying down a prophylactic rule, its failure to engage in any meaningful analysis of the statute renders its dictum unpersuasive.

CSX also relies on general statements of the supposed policy underlying the statute as supporting a prophylactic rule. Because Congress failed to explain its purpose in enacting Section 409, the courts have been left to divine it by other means. The most commonly used formulation of the statute's purpose is "to 'facilitate candor in administrative evaluations of highway safety hazards' ... and to prohibit federally required record-keeping from being used as a 'tool ... in private litigation.'" *Robertson v. Union Pacific Railroad,* 954 F.2d at 1435 (quoting *Duncan v. Union Pacific Railroad Co.,* 790 P.2d 595, 597 (Utah App.1990) and *Light v. State,* 149 Misc.2d 75, 560 N.Y.S.2d 962, 965 (N.Y.Ct.Cl.1990)).

---

**5.** Nor does Section 409 appear to preclude discovery from original sources of information that, once compiled or collected for the purposes set forth in Section 409, becomes protected. *See, e.g., Robertson v. Union Pacific Railroad,* 954 F.2d at 1435 (information from the Federal Railroad Administration was admissible); *Ex parte Alabama Department of Transportation,* 757 So.2d 371, 374 (Ala.1999) (where the state transportation department's information concerning other motor vehicle

accidents at the same crossing were based on statistics provided by the department of public safety, the information could not be obtained from the transportation department but could be obtained from the department of public safety).

**6.** The Court expressly declined to consider the plaintiff's claim for negligent delay in implementing the upgrade. *Id.*

Assuming that courts have accurately identified Congress's purpose, the express language of Section 409 and the clear limitations on its scope cannot be ignored by appeal to policy. "[P]rivileges against forced disclosure [have been] established in the Constitution, by statute, or at common law. Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 709–10, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Congress is presumed to have recognized, when Section 409 was enacted in 1987, that it would not receive an expansive construction.

At any rate, the limited scope of Section 409 is not inconsistent with its articulated purpose. Notably, this purpose speaks in terms of encouraging the "evaluation" of hazards and of preventing "required" record-keeping from assisting a plaintiff, language not comfortably stretched to reach the implementation of projects.[7] More generally, Congress is routinely required to compromise between competing social policies, and the limiting language of Section 409 simply reflects Congress's desire to promote the evaluation of hazardous conditions without giving agencies and railroads blanket immunity from scrutiny. Whether that balancing was wise is not for the Court to decide; rather, the Court's task is to follow the statute as enacted by Congress.

Courts have typically described Section 409 as a "privilege." *E.g., Shots v. CSX Transportation*, 887 F.Supp. at 206; *Kitts v. Norfolk & Western Railway*, 152 F.R.D. at 80; *Palacios v. Louisiana & Delta Railroad*, 740 So.2d at 99. CSX itself describes Section 409 as conferring a "broad exclusionary privilege." (Doc. 80 at 2).

A primary attribute of a privilege is that it may be waived by the party for whose benefit it exists, and waiver is often found when that party has voluntarily disclosed protected information. CSX disclosed certain documents, for which it now claims statutory protection, as part of its partially successful effort to have certain of the plaintiff's claims dismissed on the grounds of preemption. The plaintiff argues this production and use waived Section 409 protection.[8] CSX responds that "the doctrine of waiver does not apply to a claim of statutory privilege pursuant to 23 U.S.C. Section 409." (Doc. 80 at 2). In particular, CSX, citing an unpublished opinion from the Southern District of Indiana, argues that the language "[n]otwithstanding any other provision of law" precludes application of the doctrine of waiver to Section 409.

CSX must be careful what it wishes for. As noted, the November 1995 letter that "starts the clock" on the plaintiff's negligent delay claim is not protected by Section 409. If CSX cannot waive Section 409, it cannot use any information falling

---

**7.** Another case relied on by CSX describes Section 409's purpose as "to permit those entities involved in the railroad industry to candidly gather and share information which would *identify* potentially dangerous crossings, to *consider* how the safety of the crossing *could be* enhanced, and to establish *priorities* in view of the work *to be done* and resources available.... In other words, Congress recognized that the railroad industry needed encouragement and protection if the industry was going to make an honest *survey*

which would *point out* dangerous crossings in need of safety enhancement." *Rothermel v. Consolidated Rail Corp.*, 1998 WL 110010 at *4 (Del.Super.1998) (emphasis added). This statement of purpose as well stops abruptly at the threshold of implementation.

**8.** CSX's interrogatory responses also disclose information arguably protected by Section 409. (Doc. 67, Exhibit E at 5). The plaintiff does not argue that this disclosure worked a waiver of Section 409.

within its purview either as "evidence" or "for other purposes" in this action, including to explain the two-year delay that the plaintiff can establish without reliance on Section 409 information.[9]

The Court finds it unnecessary to resolve the question of waiver before determining what contested documents fall within Section 409 using the procedure outlined below. If the defendants have disclosed protected documents, and if they still desire to pursue a non-waiver argument, the Court will address waiver at that time.[10]

■■ As with any privilege, the burden rests on the party asserting it to establish that the elements of Section 409 are met. *E.g., Kitts v. Norfolk & Western Railway,* 152 F.R.D. at 82; *Taylor v. St. Louis Southwestern Railway,* 746 F.Supp. at 54. CSX's only effort to carry its burden is the affidavit of Mel McNichols, which will not bear the weight assigned to it.[11] Among other deficiencies, the affidavit gives no indication that McNichols is aware of, or applied, the construction of Section 409 adopted by the Court. Nor does it reflect that he has personal knowledge of the contents of every—or any—document encompassed within the plaintiff's discovery requests or that he has personally ascertained that no CSX representative possesses any requested information obtained other than from protected materials. Although the plaintiff's motion to strike McNichols' affidavit is **denied,** the affidavit is inadequate to aid CSX's position.

Rule 26(b)(5) requires a party relying on a privilege to describe the nature of the withheld documents with sufficient specificity that, without disclosing allegedly privileged information, "will enable other parties to assess the applicability of the privilege." Moreover, the scheduling order in this case expressly requires that invocations of privilege be accompanied by a truncated version of the "privilege log" discussed in *Introduction to Civil Discovery Practice in the Southern District of Alabama* at 8–11 (1998).[12] Finally, other courts assessing the applicability of Section 409 have recognized in camera production of the disputed documents as an appropriate tool. *E.g., Shots v. CSX Transportation,* 887 F.Supp. at 205; *Pa-*

---

9. For example, in its interrogatory responses CSX states that, following the state's authorization to proceed, the project design had to be revised to be compatible with another crossing, and that the other crossing system had to be constructed first to lay the foundation for approach circuits to the subject crossing. (Doc. 67, Exhibit E at 5). Assuming this information is protected by Section 409, CSX cannot rely on it at trial if the doctrine of waiver does not apply to Section 409.

10. Among the waiver issues inadequately briefed by the parties is the scope of any waiver, that is, whether and under what circumstances the disclosure of certain documents protected by Section 409 could work a waiver as to other documents and information not disclosed.

11. McNichols states that "[t]he testimony and documents requested pursuant to [certain listed discovery requests] would be based upon and concern information contained in reports, surveys, schedules, lists, or data compiled or collected by CSX in connection with the Federal Grade Crossing Safety Program for the purpose of identifying, evaluation, or planning the safety enhancement of the Martin Luther King railway-highway crossing project and other federally funded projects in Atmore, Alabama." (Doc. 75 at 3–4).

12. There is no evidence that the defendants have complied with these requirements. While CSX suggests that compliance would have itself revealed privileged information, this in plainly incorrect, as only the *contents* of any "reports, surveys, schedules, lists, or data" is protected by Section 409, and a privilege log does not require the disclosure of such contents.

*lacios v. Louisiana & Delta Railroad,* 740 So.2d at 101 n. 10.

The Court concludes that, in order to assess the defendants' claim of privilege under Section 409, each defendant separately must file and serve a privilege log compliant with the *Introduction to Civil Discovery Practice*[13] and must submit to the Court, for in camera inspection, all documents encompassed within the plaintiff's discovery requests[14] as to which the defendant claims the protection of Section 409, whose production has not been barred by the Court on other grounds. The documents shall be submitted in a form that allows easy reference to the corresponding entry in the privilege log. The defendants shall clearly identify each allegedly protected document that it or any other defendant has previously disclosed in this action. The defendants are **ordered** to file and serve their separate privilege logs and to separately submit the contested documents within 14 days of the date of entry of this order. If it so chooses, any defendant may, within the same time period, file and serve such material as it deems appropriate and sufficient to establish that particular documents or groups of documents satisfy the elements of Section 409.[15]

It may well be that very little of what the plaintiff seeks escapes Section 409's grasp. The point, however, is that Section 409 has limits, and a party seeking to enjoy its benefits must establish that the disputed information comes within its scope. Conclusory affidavits and general appeals to policy, especially when divorced from any description or discussion of the specific underlying documents at issue, cannot carry that burden. The foregoing

procedure affords the defendants a second opportunity to do so.

---

13. The defendants need not provide the information required by paragraphs 2.a.(vii) and (ix).

14. It is evident that the plaintiff's discovery requests seek only a fraction of the information and documents that could fall within

Section 409's purview; the defendants are not to burden the Court with documents not requested by the plaintiff.

15. An affidavit as conclusory and unhelpful as that of Mr. McNichols will of course be afforded no weight.