h JOHNSON, Justice
dissenting.
First, I dissent from the majority’s conclusion that the correspondence between the Mayor of the Village of Bonita and Mr. Pistorius of the Department of Transportation and Development (“DOTD”) are inadmissible under 23 U.S.C. § 409. As a threshold requirement, the information protected by § 409 must be in the form of “reports, surveys, schedules, lists or data,” and such information must have been “compiled or collected.” Powers v. CSX Transportation, Inc., 177 F.Supp.2d 1276, 1278 (S.D.Ala.2001).
In this case, in his letter to Mayor Ly-tle, Mr. Pistorius stated that the DOTD intended to provide signals for the Harp Street crossing “from funds available through a federal safety program.” Mr. Pistorius went on to express that the Village of Bonita was required to maintain the pavement striping and the railroad crossing signs “[i]n order to comply with Federal Highway Administration requirements.” The mayor’s response to Mr. Pis-torius merely reflected the Village of Bonita’s consent to maintain the crossing. Neither letter contained or referenced any “reports, survey, lists, or data compiled or collected for” § 130 purposes. Thus, using the plain language of § 409, [ 2it is axiomatic that the letters are not, nor do they contain, “reports, surveys, schedules, [or] lists.”
Few courts have considered whether letters," alone, are prohibited under § 409. In Powers, supra, the administrator of the estate of a driver killed in a railroad crossing accident filed -a wrongful death action against the railroad in state court. The case was later removed to federal court. The defendants disclosed a letter from the Alabama Department of Transportation’s office engineer to CSX Transportation’s director of construction/public projects, pertaining to planned signalization of the railroad crossing at issue. In the letter, the engineer stated that the letter was CSX’s “authority to proceed with the work and to bill the State for actual cost as provided for in the agreement.” The court concluded that the letter “neither is nor contains any ‘reports, surveys, schedules [or] lists.’ ” The court went on to state:
While the letter may constitute “data” in the sense that it includes information (the fact and date of authorization to proceed), it is not data “compiled or collected” but is data created by [Alabama Department of Transportation] itself. Thus, the letter falls outside the protection of Section 409.
Powers at 1278. The court further noted that while certain attachments to the letter may have fallen within the categories set forth in § 409, the letter itself did not. Additionally, the court observed:
*105 It is far from clear that Congress used the term “data” in such a generic, universal sense. “It is intended that raw data collected prior to being made part of any formal or bound report ” shall not be discoverable, admissible in evidence or used for other purposes in litigation. H.R.Rep. No. 104-246, at 59 (1995), reprinted in 1995 US.C.C.A.N. 522, 551.
Powers at 1278, fn. 3.
The words of a law must be given their generally prevailing meaning. LSA-C.C. art. 11. Webster’s Dictionary defines “data” as follows: “factual information |s(as measurements or statistics) used as a basis for reasoning, discussion, or calculation.” WEBSTER’S NINTH NEW COLLEGIATE DICTIONARY 325 (7th ed.1990).
In this case, the DOTD presented the testimony of Mr. William Shrewsberry, Jr., the supervisor of the DOTD’s Maintenance Division Railroad Unit, which is in charge of administering the federal railroad safety program and upkeeping the data and information necessary for the administration of the program. According to Mr. Shrewsberry’s testimony, the correspondence between the DOTD and the Mayor of the Village of Bonita was part of the process to secure funding for an off-system railroad crossing under the Federal Railroad Safety Program.[1] Once the DOTD received the request for the signalization of the crossing, it forwarded the request to its maintenance division railroad unit for evaluation under the Federal Railroad Safety Program. Regarding the September 6, 1995 letter from Mr. Pistori-us to Mayor Lytle, Mr. Shrewsberry testified that before committing to signalize a crossing, both the FHWA and the DOTD requires a commitment from the local governing body to be responsible for the advance warning signs and pavement markings. Mr. Shrewsberry stated:
The only way DOTD can do any work at a railroad crossing is through federal funding that’s not on the State maintained system[,] and so it’s the Federal Railroad Safety Program that we have is the only way allows us to do work on a parish or city street to enhance the crossing safety. So the [FHWA] authorization can only be done after everything is done by DOTD[,] ... and then DOTD[,] if they can evaluate and justify the expenditures of funds[,] will request the FHWA to set aside federal money to do the job.
According to Mr. Shrewsberry, when the DOTD informs a local governing body that it plans to apply for federal funding to signalize a crossing, the process for upgrading Rthe crossing is still in the developmental stages until the FHWA authorizes the funding.
There is nothing in this record that indicates that the letters at issue contained any factual information or were used as a basis for reasoning, discussion or calculation. Although it is clear that the letters were generated as part of the DOTD’s effort to comply with the federal mandate to secure funding for the signalization of the Harp Street crossing, in my mind, the letters, alone, were not “data, compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancements of ... railway-highway crossings ...” within the meaning of § 409. As the court of appeal noted, the letters herein do not contain, nor do they refer to, any safety information which would be exclud *106 ed under § 409. Therefore, I believe that, pursuant to the plain language, of § 409, court of appeal did not err in concluding that the letters at issue are admissible in this case.
Furthermore, in my opinion, a remand of this matter is unnecessary, as the evidence was sufficient to establish that the DOTD breached its duty to upgrade the railroad crossing, and the breach of the duty was a cause-in-fact of plaintiffs’ injuries.
It is undisputed that the DOTD agreed to upgrade the Harp Street crossing. In Mr. Pistorius’ letter to Mayor Lytle, he expressly stated that the DOTD “plans to signalize the railroad crossing from funds available through a federal safety program.” Therefore, pursuant existing jurisprudence, the DOTD assumed the duty to upgrade the crossing by selecting it for improvement.
In this case, Mayor Lytle wrote the DOTD requesting an upgrade to the Harp Street crossing on May 18, 1995. ■ On September 6, 1995, Mr. Pistorius responded to the mayor that the DOTD “plans to signalize the railroad crossing....” On September 13, 1995, the mayor responded, agreeing to maintain the pavement striping Land signs.
It is unclear from the record when the DOTD submitted the required data to the railroad in this case. However, it is clear from Mr. Shrewsberry’s testimony that the railroad sent the DOTD its plans and estimates pertaining to the crossing in April, 1996, approximately seven months after the DOTD agreed to signalize the crossing. The FHWA authorized the Harp Street Project in November 4, 1997, and the DOTD issued the work order to the railroad November 24, 1997. Thus, two years elapsed from the time the DOTD indicated that it planned to signalize the crossing and when the FHWA actually authorized the crossing.[2]
Whether a defendant has breached a duty is a question of fact. Peterson v. Gibraltar Sav. & Loan, 98-1601 (La.5/18/99), 733 So.2d 1198; Mundy v. State, Dept. of Health and Human Resources, 92-3251 (La.6/17/93), 620 So.2d 811. A trial court’s findings of fact may not be reversed absent manifest error or unless clearly wrong. Stobart v. State of Louisiana, through Dep’t of Transp. and Dev., 92-1328 (La.4/12/93), 617 So.2d 880. The • reviewing court must do more than just simply review the record for some evidence which supports or controverts the trial court’s findings; it must instead review the record in its entirety to determine whether the trial court’s finding was clearly wrong qr manifestly erroneous. Id at 882. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact-finder’s conclusion was a reasonable one. Id. The reviewing court must always keep in mind that “if the trial court’s or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id. at 882-83 (citing Housley v. Cerise, 579 So.2d 973 (La.1991)) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
When asked what measures did the DOTD take to signalize the crossing between September 1995 until November 1997, Mr. Shrewsberry stated that the DOTD “followed the procedures as laid out *107 under the Federal Railroad Safety Program to get plans and estimates.... ” Mr. Shrewsberry testified that the process between agreeing to signalize a railroad crossing and the completion of the signalization generally takes approximately three and one-half years. However, he emphasized that the process cannot be completed until the FHWA authorizes it.
The DOTD notified the Mayor of the Village of Bonita that the Harp Street crossing had been selected for upgrades on September 6, 1995. The plans and estimates from the railroad were received in April of 1996, seven months after the DOTD agreed to upgrade the crossing. However, FHWA authorization was not secured until November 4, 1997, over two years after the agreement to signalize the crossing, and two months after Mrs. Long’s death.
Mr. Shrewsberry testified regarding the procedure for obtaining federal funding under the Federal Safety Railroad Program. According to him, the DOTD is required to compile “background inventory,” along with correspondence among various parties, including the railroad involved and local officials. Additionally, the DOTD maintains a computer tracking system to track various projects. The railroad is responsible for providing the DOTD with plans and estimates based upon the characteristics of the site in question and upon discussions between the Federal Highway Administration (“FHWA”) and the railroad. Also, an environmental clearance must be obtained. Once the file is complete and the DOTD approves the proposed project, the entire package is submitted to the FHWA for approval. The DOTD cannot signalize an off-system crossing without the authorization of the 17FHWA. Mr. Shrewsberry stated:
The only.way DOTD can do any work at a railroad crossing is through federal funding that’s not on the State maintained system[,], and so it’s the Federal Railroad Safety Program that we have is the only way allows us to do work on a parish or city street to enhance the crossing safety. So the [FHWA] authorization can only be done after everything is done by DOTD[,] ... and then DOTD[,] if they can evaluate and justify the expenditures of funds[,] will request the FHWA tó set aside federal money to do the job.
According to Mr. Shrewsberry, when the DOTD informs a local governing body that it plans to apply for federal funding to signalize a crossing, the process for upgrading the crossing is still in the developmental stages until the FHWA authorizes the funding. Therefore, although the DOTD asserted that it “planned” to signalize the crossing, the FHWA could have refused to authorize the funding, which would have aborted the entire process.
A determination of what constitutes a “reasonable” period of time between the formation of an agreement to signalize a crossing and the actual procurement of FHWA authorization must be done on a case-by-case basis. After hearing from numerous witnesses on both sides, the jury apparently concluded that the delay in ob-‘ taining the funding to complete the signalization of the crossing constituted a breach of the DOTD’s duty.
Moreover, a party’s conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm. Toston v. Pardon, 2003-1747 (La.4/23/04), 874 So.2d 791, 799. The act is a cause-in-fact in bringing about the injury when the harm would not have occurred without it. Id. While a party’s conduct does not have to be the sole cause of the harm, it is a *108 necessary antecedent essential to an assessment of liability. Id.
In this case, although some testimony indicated that the decedent failed to stop | sat the stop sign. However, the expert in accident reconstruction, as well as the expert in the area of traffic engineering testified and agreed that the accident would not have occurred had the crossing been signalized.
Based on my review of the record, and being guided by prior jurisprudence established by his Court, I can find no manifest error in the jury’s finding that the DOTD breached its duty to plaintiffs and that breach of duty resulted in plaintiffs’ injuries.

. A crossing that is not part of the State highway system is referred to as an "off-system” crossing.

. Mr. Shrewsberry testified that the upgrade to the crossing was completed and functional on May 27, 2000.