# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of the Care and Treatment of Vincent Neal Way, Petitioner/Respondent,

v.

The State of South Carolina, Respondent/Petitioner.

Appellate Case No. 2011-199686

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Charleston County
The Honorable Deadra L. Jefferson, Circuit Court Judge

---

Opinion No. 27444
Heard November 20, 2013 – Filed September 3, 2014

---

## AFFIRMED AS MODIFIED IN PART; CERTIORARI DISMISSED IN PART AS IMPROVIDENTLY GRANTED

---

Appellate Defender LaNelle Cantey Durant, of Columbia, for Petitioner/Appellant.

Attorney General Alan Wilson and Assistant Attorney General William M. Blitch, both of Columbia, for Respondent/Petitioner.

**JUSTICE BEATTY:**  A jury found Vincent Neal Way met the definition of a sexually violent predator (SVP) under South Carolina's SVP Act, S.C. Code Ann. §§ 44-48-10 to -170 (Supp. 2013).  The circuit court ordered Way to begin involuntary civil commitment for long-term control, care, and treatment in the SVP treatment program administered by the South Carolina Department of Mental Health.  Way appealed, and the Court of Appeals affirmed.  *In re the Care & Treatment of Way*, Op. No. 2011-UP-268 (S.C. Ct. App. filed Aug. 24, 2011).  This Court granted cross petitions for a writ of certiorari filed by Way and the State.  As to Way's appeal, we affirm as modified, and we dismiss the State's petition for a writ of certiorari as improvidently granted.

## I.  FACTS

In 1993, Way pled guilty to committing a lewd act on a minor.  The victim was Way's 13-year-old niece, who was spending the night with Way (who was then about 28 years old) and his wife.  The victim reported that Way put his hand inside her clothing while she was sleeping on the couch and fondled her, kissed her thigh, and then laid on her and "began humping her."  Way was sentenced to ten years in prison, suspended upon the service of eighteen months in prison and five years of probation.

In 1995, while on probation, Way pled guilty to contributing to the delinquency of a minor.  In that matter, Way allowed two girls who were runaways, one 13 and one 15, to spend the night at his home without notifying the police.

While still on probation in 1997, Way pled guilty to committing a lewd act upon a minor.  The victim was a 13-year-old girl, who reported that Way met her at a boat dock in 1995 and gave her marijuana, then had sexual intercourse with her.  Way was sentenced to fifteen years in prison for this offense.

In 2007, prior to his release from prison, Way was referred to the multidisciplinary team, which determined there was probable cause to believe Way

met the statutory definition of an SVP.[1]  The multidisciplinary team referred Way's case to the prosecutor's review committee, which filed a petition with the circuit court for civil commitment proceedings.  The circuit court concluded probable cause existed and ordered a mental evaluation of Way to be performed by Dr. Donna Schwartz-Watts.  Dr. Schwartz-Watts performed an evaluation and was the State's expert.  Way also obtained an independent mental evaluation by an expert of his own choosing, Dr. Tom Martin.

At the civil commitment proceeding in 2009, Dr. Schwartz-Watts testified that she believed Way suffered from a mental abnormality or personality disorder as defined by the SVP Act.  Specifically, she diagnosed him as having a sexual disorder, not otherwise specified, based on his prior sexual history with several 13-year-old girls.  She also diagnosed Way as having amnesia (for events prior to 1994) based on a head injury he sustained in a car accident in 1994.  She found, however, that any memory loss was not due to brain damage because testing revealed Way has "a high average IQ."

Dr. Schwartz-Watts stated her evaluation indicated Way was likely to re-offend.  In particular, she noted his subsequent offenses occurred while he was still on probation and the incidents occurred in places where others were present, which showed Way had an inability to control his impulses.

Just before Way testified, Way's counsel renewed a motion to preclude the State from mentioning the fact that Way had seen an expert of his own choosing, Dr. Martin, who would not be testifying.  Counsel acknowledged Way saw Dr. Martin and was evaluated, but stated the doctor did not make a report of his findings.

The circuit court observed that one can always comment about a witness who is not called, and that it is done every day in criminal and civil cases.  Way's counsel countered that the inference usually applies to fact witnesses, whereas here, they consulted an expert for an evaluation in accordance with a statute that

---

[1]  An SVP is defined as "a person who:  (a) has been convicted of a sexually violent offense; and (b) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment."  S.C. Code Ann. § 44-48-30(1)(a)-(b) (Supp. 2013).

made the funds available for a second evaluation.  The court disagreed, stating the statute merely creates a right.  The court explained, "I don't think there is anything that precludes the State from asking him, did you demand to be evaluated, to have an independent evaluation, and was that evaluation done?  I think that ends the inquiry."

During cross-examination, the State asked Way if, "in preparation for this hearing, you were transported . . . from the jail to Columbia to see a Dr. Martin to be evaluated for these proceedings," and Way confirmed that he was transported to see a doctor and that he was asked questions and had evaluations, but he did not recall any specifics.

In closing argument, the State made the following additional reference to Dr. Martin and invoked what is commonly called the "missing witness rule," arguing the jury could infer the absence of Dr. Martin indicated that his testimony would have been adverse to Way:

> Now on cross-examination I asked the respondent, did you go to be evaluated by Dr. Martin pursuant to this case?
>
> . . . .
>
> Now Dr. Martin is not here.  And the question, I think the inference you can draw from that is would Dr. Martin's testimony, if he was here, be adverse to the respondent?  So, that's where we are.

At the conclusion of the evidence, the jury found Way met the definition of an SVP, and the circuit court ordered him to be civilly committed for long-term control, care and treatment.  Way appealed, and the Court of Appeals affirmed.  This Court has granted cross petitions for certiorari by Way and the State regarding the State's cross-examination of Way and its closing argument.

## II.  STANDARD OF REVIEW

"In an action at law, on appeal of a case tried by a jury, the jurisdiction of the appellate court extends merely to the correction of errors of law."  *Carson v. CSX Transp., Inc.*, 400 S.C. 221, 229, 734 S.E.2d 148, 152 (2012).  "The scope of cross-examination rests largely in the discretion of the trial court."  *Duncan v. Ford Motor Co.*, 385 S.C. 119, 133, 682 S.E.2d 877, 884 (Ct. App. 2009) (citation

omitted).  Likewise, "[a] trial court is allowed broad discretion in dealing with the range and propriety of closing argument to the jury." *O'Leary-Payne v. R.R. Hilton Head, II, Inc.*, 371 S.C. 340, 352, 638 S.E.2d 96, 102 (Ct. App. 2006).

"An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000).  To warrant reversal, an appealing party must demonstrate not only error in the court's ruling, but also resulting prejudice.  *Id.* at 390, 529 S.E.2d at 539; *see also Duncan*, 385 S.C. at 133, 682 S.E.2d at 884 (stating reversal requires a showing of both a manifest abuse of discretion and prejudice).

## III.  LAW/ANALYSIS

The pertinent issues before the Court of Appeals concerned (1) the cross-examination of Way, during which the State asked Way whether he had another evaluation performed by Dr. Martin; and (2) the State's closing argument, in which it argued an adverse inference could be taken by the jury from Dr. Martin's absence at trial.  The Court of Appeals "agree[d] with the trial court's decision to allow the State to cross-examine Way regarding a second mental evaluation, [but] h[e]ld it was improper for the State to imply a negative inference regarding the absence of Way's expert witness before the jury." *In re the Care & Treatment of Way*, Op. No. 2011-UP-268 (S.C. Ct. App. filed Aug. 24, 2011), slip op. at 4.  However, the Court of Appeals affirmed on the basis of harmless error.  *Id.* at 6.

### A.  Way's Appeal

In his appeal, Way challenges the propriety of both the State's cross-examination of Way and its invocation of the missing witness rule in closing argument.

We disagree with the Court of Appeals to the extent it found it did not constitute error for the State to question Way about Dr. Martin.  The Court of Appeals found this issue should properly be addressed according to the South Carolina Rules of Evidence (SCRE) and established precedent.  *Id.* at 4.  The court noted all relevant evidence is generally admissible under Rule 402, SCRE, yet relevant evidence may be excluded under Rule 403, SCRE if its probative value is substantially outweighed by the danger of unfair prejudice.  *Id.*  The court also cited precedent for the proposition that a trial judge has wide latitude in the

admissibility of evidence, and that an appellate court reviews such rulings based on an abuse of discretion standard. *Id.* (citing, *inter alia*, *State v. Torres*, 390 S.C. 618, 703 S.E.2d 226 (2010)).

While the Court of Appeals was correct that the admission of this testimony is governed by the SCRE and our case law, for the reasons discussed in another decision issued today by this Court, *In re the Care & Treatment of Gonzalez*, Op. No. 27443 (S.C. Sup. Ct. filed September 3, 2014) we find the probative value of questioning Way about his retention of a non-testifying psychiatric expert was not substantially outweighed by the danger of unfair prejudice. *See* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). As a result, we conclude the State should not have been allowed to cross-examine Way about his retention of his non-testifying expert witness, Dr. Martin.

We further conclude that it was error to allow the State to assert during closing argument that the jury could infer the missing witness's testimony would have been adverse to Way's case. The Court of Appeals found it was error because when a party lacks control over the retained expert witness, an adverse inference is improper. *Way*, No. 2011-UP-268, slip op. at 5. As we explained in *Gonzalez*, we believe invocation of the missing witness rule should be limited to fact witnesses, and it should not be invoked as to medical, psychological, psychiatric, or similar medical expert *opinion* witnesses. The application of an adverse inference as to these types of experts allows a jury to simply *speculate* as to what the expert might have said. In our view, an adverse inference is not appropriate regarding the opinions held by medical, psychological, psychiatric, or similar medical experts, as the condition of a party is based upon numerous complex factors that do not readily lend themselves to being reduced to a discrete, adverse inference, as compared to a fact witness.

That being said, however, we must next examine whether the errors as to the State's cross-examination and closing argument constitute reversible error under a harmless error analysis. "Error is harmless where it could not have reasonably affected the result of the trial." *Judy v. Judy*, 384 S.C. 634, 646, 682 S.E.2d 836, 842 (Ct. App. 2009). "Generally, appellate courts will not set aside judgments due to insubstantial errors not affecting the result." *Id.* (citing *State v. Sherard*, 303

S.C. 172, 176, 399 S.E.2d 595, 597 (1991)).  "No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case."  *Id.* (citation omitted).

In this case, the Court of Appeals held any error was harmless beyond a reasonable doubt, stating "[e]vidence of Way's prior sexual criminal history, the testimony of the State's expert witness, and the testimony of the victim of Way's 1993 [] offense provided relevant and substantive evidence to support the jury's determination."  *Way*, No. 2011-UP-268, slip op. at 6.

During cross-examination, the State asked Way if he had seen Dr. Martin for an evaluation, and during cross and closing the State never referred to Dr. Martin as Way's expert or mentioned that Way had retained Dr. Martin for an independent evaluation but then did not call him as a witness, so there was only limited information elicited at trial in this regard.  All of the information regarding Dr. Martin's role as Way's expert was confined to the colloquy among the parties and the circuit court.  In addition, Way was not prevented from rebutting the adverse inference if he deemed it necessary.  *See Dansbury v. State*, 1 A.3d 507, 522 (Md. Ct. Spec. App. 2010) ("Where a party raises the missing witness rule during closing argument, its use is just that—an argument. . . .  Furthermore, the opposing side also has an opportunity to refute the argument and counter with reasons why the inference is inappropriate." (alteration in original) (citation omitted)). Consequently, we agree with the Court of Appeals that any error could not have reasonably affected the outcome here.

## B.  The State's Appeal

The State has filed a cross appeal in this matter.  "Any party aggrieved may appeal in the cases prescribed in this title."  S.C. Code Ann. § 18-1-30 (1985); *see also* Rule 201(b), SCACR ("Only a party aggrieved by an order, judgment, or sentence may appeal.").  An "aggrieved party" as contemplated by this section is one who is injured in a legal sense, i.e., one who has been denied a personal or property right, or where a burden or obligation has been imposed.  *Dunson v. Dunson*, 278 S.C. 210, 294 S.E.2d 39 (1982); *Bivens v. Knight*, 254 S.C. 10, 173 S.E.2d 150 (1970).  Thus, a party ordinarily may not appeal from a judgment, order, or decree in his own favor.  *Wilson v. S. Ry., Carolina Div.*, 123 S.C. 399, 115 S.E. 764 (1923).

The statutory requirement rests on the principle that a reviewing court is concerned with correcting errors that have practically wronged the appealing party. *Cisson v. McWhorter*, 255 S.C. 174, 177 S.E.2d 603 (1970). When an appellant has not been prejudicially or injuriously affected by the judgment, the party has no standing to appeal. *Id.* at 178, 177 S.E.2d at 605; *see also First Union Nat'l Bank of S.C. v. Soden*, 333 S.C. 554, 511 S.E.2d 372 (Ct. App. 1998). It is this Court's duty to reject an appeal by a party who is not aggrieved in the legal sense by the judgment of the trial court. *Cisson*, 255 S.C. at 178, 177 S.E.2d at 605.

In this case, although the State disputes some findings made by the circuit court, it has prevailed on the ultimate issues that were decided, i.e., Way's status as an SVP and his involuntary civil commitment have been upheld. Consequently, the State is not an aggrieved party in the legal sense, so we dismiss certiorari as improvidently granted as to the State.

## IV. CONCLUSION

Based on the foregoing, the decision of the Court of Appeals is affirmed as modified as to Way's appeal, and we dismiss certiorari as improvidently granted as to the State's cross appeal.

**AFFIRMED AS MODIFIED IN PART; CERTIORARI DISMISSED IN PART AS IMPROVIDENTLY GRANTED.**

**TOAL, C.J., KITTREDGE and HEARN, JJ., concur. PLEICONES, J., concurring in result only in a separate opinion.**

**JUSTICE PLEICONES:**  I agree with the majority that it was error for the trial judge to permit the State to invoke the missing witness rule[2] for the reasons set forth in my concurrence *In the Matter of Gonzalez*, Op. No. 27443 S.C. ___, ___ S.E.2d ___, 2014 WL (S.C. Sup. Ct. filed September 3, 2014) (Pleicones, J., concurring).  I also agree the error was harmless.[3]  I therefore concur in result only and would affirm the Court of Appeals' decision as modified.[4]

---

[2] I disagree with the majority's discussion of Rule 403.  As I understand the majority's opinion in *Gonzalez*, the missing witness rule can *never* be invoked for opinion witnesses.  Therefore, a Rule 403 analysis is unnecessary.  Likewise, I would find the majority's distinction between the invocation of the rule on cross-examination or during closing argument unnecessary.

[3] Unlike the majority, I do not base my harmless error finding on the fact that Way could have rebutted the adverse inference if he deemed it necessary.

[4] I disagree that the State cannot seek certiorari because it was not an aggrieved party.  Rule 242(a), SCACR, permits *any party* to seek a writ of certiorari to review a final decision of the Court of Appeals.  I would not impose a limitation on our certiorari jurisdiction as the majority has done.  Therefore, I believe the majority has erred in dismissing the State's cross-petition as improvidently granted.