PIERCE, Justice, for the Court:
¶ 1. This appeal arises out of a civil suit by the estates and wrongful-death beneficiaries of Christopher Allan Bloodworth, Steven Earl Tallant Jr., Marcus Richardson, and A.W. Hilson, four men killed at a railroad crossing when a freight train collided with the truck in which they were traveling (hereinafter Plaintiffs). The wrongful-death beneficiaries of Blood-worth, Tallant, Richardson, and Hilson filed their complaint(s) against Illinois Central and its employees: the train crew, Ronnie C. Hollowell (the engineer) and J.D. Miller (the conductor), as well as other employees of Illinois Central’s track department, Thomas Caldwell and James Shoemaker, (hereinafter Defendants).[1]
¶ 2. Defendants filed two motions for summary judgment in the matter. The circuit court granted summary judgment in favor of Defendants with respect to Plaintiffs’ claims alleging negligent operation of the train. The circuit court also granted partial summary judgment in favor of Defendants on three of four contested issues regarding the engineering and maintenance of the railroad crossing— leaving one surviving claim. The circuit court then granted five of Defendants’ motions in limine to exclude Plaintiffs’ evidence. Finding that, without the excluded evidence, Plaintiffs could not support the remaining claim, the circuit court granted Defendants’ motions for summary judgment in their entirety and issued a judgment and certificate pursuant to Rule 54(b) of the Mississippi Rules of Civil Procedure. Plaintiffs appeal to this Court, and Defendants have filed a cross-appeal as to certain rulings issued by the trial court. Because we affirm the trial court’s grant of summary judgment in favor of Defendants on each claim by Plaintiffs, we dismiss Defendants’ cross-appeal as moot.
FACTS AND PROCEDURAL HISTORY
¶ 3. At approximately 6:23 a.m. on May 30, 2005, a southbound Illinois Central freight train struck an eastbound Tallahat-chie County work truck at a railroad cross *891 ing (known as the Mikoma Crossing) on Highway 82 in Tallahatchie County, Mississippi, killing all four of the truck’s occupants — Hilson, Bloodworth, Tallant and Richardson. Hilson, the driver, was an employee of Tallahatchie County. The passengers, Bloodworth, Tallant, and Richardson, each were inmates at the Tallahat-chie County Correctional Facility.
¶ 4. At the time of the accident, Illinois Central owned, controlled, and operated the railway and the trains running thereon. When the accident occurred, the train’s engineer, Hollowell, and the conductor, Miller were employed by Illinois Central and were operating the train during its travel. Hollowell and Miller, were the only surviving eyewitnesses to the accident.
¶ 5. Following the accident, the passenger-inmates’ families and estates initiated a wrongful-death action against Illinois Central, Hollowell, Miller and various other employees and affiliates of Illinois Central.[2] In addition, Bloodworth, Richardson, and Tallant sued Hilson’s estate, as he was the driver of the inmate’s work truck. The passengers’ families also demanded punitive damages from both the Illinois Central Defendants and Hilson. Hilson’s estate and beneficiaries filed a cross-claim against Illinois Central and its employees for wrongful death and death benefits.

Procedural History

¶ 6. Defendants filed two motions for summary judgment, dividing Plaintiffs’ claims into two genera: negligence with respect to the train’s operation and negligence with respect to the crossing’s engineering and maintenance. Specifically, Plaintiffs claimed that Hollowell and Miller had failed to keep a proper lookout, had failed to avoid the accident, and had failed to sound the train’s horn; while Illinois Central had failed to supervise them as its employees. Further, Plaintiffs claimed Illinois Central and its employees had failed to remove obstructive vegetation, had negligently engineered and designed the Mi-koma crossing, had installed an inadequate warning mechanism at the crossing, and negligently had maintained the signal system itself.
¶ 7. The circuit court initially granted summary judgment in favor of Defendants on all claims except one; it denied summary judgment with respect to the adequacy of the type of signal system installed at the crossing.
¶ 8. Defendants then filed eight motions in limine to exclude Plaintiffs’ evidence at trial. Via the in limine motions, Defendants sought to limit testimony of Plaintiffs’ expert Kenneth Heathington, and to exclude evidence of other accidents at the crossing, near-accidents at the crossing, alleged vegetation removal after the instant accident, evidence of instances of signal malfunctions, and evidence of economic damages, because three of the decedents were incarcerated at the time of their deaths. The circuit court subsequently granted these exclusions/limitations in favor of Defendants.
¶ 9. After granting three in limine motions, partially granting two in limine motions and reserving ruling on one of Defendants’ motions in limine, Defendants made a supplemental motion for summary judgment. The trial court thereafter heard arguments concerning the sole surviving claim — whether the type of signal system installed at the Mikoma crossing was appropriate for such a crossing, and similarly, whether it was adequate for warning purposes therein. Having exclud *892 ed much of Plaintiffs’ evidence necessary to plead the surviving claim, the trial court concluded that summary judgment was proper on Plaintiffs’ last claim.[3] After granting summary judgment in favor of Defendants on Plaintiffs’ last claim, the trial court disposed of the action pursuant to Rule 54(b).[4]
¶ 10. This appeal followed. Additional facts, as necessary, will be related in our discussion of the issues.
ISSUES
¶ 11. Plaintiffs’ assert the following issues:
I. Whether the circuit court erred when it granted Defendants’ motions for summary judgment.
II. Whether the circuit court erred when it granted Defendants’ motions in limine.
III. Whether the circuit court erred in denying Plaintiffs’ right to have a jury decide their claims.
ANALYSIS
¶ 12. Specifically, the Plaintiffs contest the circuit court’s orders granting Defendants’ two motions for summary judgment and four motions in limine. Defendants, conversely, contest the three motions in limine which were granted partially and partially denied. As mentioned, because we find Defendants’ claims are moot, they will not be addressed.[5]
I. Whether the circuit court erred in granting Defendants’ motions for summary judgment.
¶ 13. Mississippi Rule of Civil Procedure 56 provides for summary judgment.[6] On appeal, this Court reviews an order of summary judgment de novo.[7] “Upon reviewing a grant of summary judgment, this Court must view the evidence in the light most favorable to the party against whom the motion has been made.”[8] The sole determination, with respect to a summary judgment motion, is whether “triable issue[s]” exist, and the Court does not pro *893 ceed to resolve issues outside a trial.[9] “The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”[10]
¶ 14. On appeal, Plaintiffs assert that the circuit court improperly granted summary judgment in favor of Defendants, despite the existence of material factual issues that Plaintiffs believe should have been reserved for a jury. The circuit court, in its November 8, 2011, order, granted summary judgment in favor of Defendants with respect to all of Plaintiffs’ negligent-operation claims, which alleged the operators (1) failed to sound the warning horn, (2) failed to brake to avoid the collision, (3) failed to keep a proper lookout, and that (4) Illinois Central failed to properly supervise its employees. Regarding Defendants’ second motion for summary judgment, the court granted judgment on three of Plaintiffs’ negligent-maintenance and engineering claims, including claims that Illinois Central (1) failed to remove obstructive vegetation at the Mikoma Crossing, (2) negligently engineered and designed the crossing, and (3) negligently maintained the Mikoma Crossing’s flasher-light signal system. The court denied summary judgment regarding Plaintiffs’ claims that the Mikoma crossing warning system was inadequate.[11]

Negligent Operation of the Train

[12]

¶ 15. In their complaint, Plaintiffs allege the train’s operators, Hollowell and Miller, failed to use reasonable care, maintain a proper lookout, maintain the train under the proper control or sound the train’s horn before the collision, and thus, operated the horn in such a way that a vehicle lawfully crossing the train tracks would be struck.[13] Under what this Court refers to as the “Plaintiffs’ operational claims” (aside from the later-discussed “engineering/maintenance claims”), Plaintiffs attribute negligence to Illinois Central and its employees via expert testimony that posits the accident could not have occurred as Hollowell and Miller claim. Although Plaintiffs conceded many of their operational-negligence claims at oral argument before this Court, we nonetheless address the issues involved.
¶ 16. The maximum allowable speed limit for freight trains traveling across the Mikoma Crossing is 60 mph. Hollowell stated in his deposition that the train’s speed immediately prior to the accident was approximately 50 mph. Both Hollo-well and Miller stated in their respective depositions that each was keeping a proper lookout as the train approached the Miko-ma Crossing. Miller was looking to the east for westbound traffic when he saw the truck a split second prior to the collision. Hollowell also was looking for any vehicles approaching the Mikoma Crossing and blowing the train’s horn. Hollowell first saw the truck approaching the crossing at a distance of approximately 120 to 140 feet *894 from the crossing. Hollowell estimated the truck’s speed to be between 50 and 55 mph, because this was the posted speed limit on Highway 82. Hollowell said he immediately applied the train’s emergency brakes when he saw the truck, because it was apparent that the truck was not going to stop. Hollowell and Miller were the only surviving eyewitnesses to the collision. Their accounts of the events before and leading up to the accident were supported by the train’s event recorder.[14]
¶ 17. According to the event-recorder printout, at 6:28:02 a.m., the train’s speed went from 48.5 mph to 49.5 mph. The train speed stayed at 49.5 mph as it approached the Mikoma Crossing. The locomotive horn activated at approximately 1,283 feet before the point of impact. Emergency braking began at 6:23:21 a.m, approximately two seconds prior to impact. The train came to a stop at 6:24:03 a.m. The train traveled a distance of approximately 1,864 feet during emergency braking, and the train took approximately 42 seconds to stop once the emergency brakes were activated.

A. Tram’s Horn Signal

¶ 18. Under Mississippi law, when approaching a railroad crossing, train operators are required to sound the tram’s horn or whistle at least 300 yards away from the crossing until the crossing is passed.[15] Mississippi Code Section 77-9-225 provides:
Every railroad company shall cause each locomotive engine run by it to be provided with a bell of at least thirty (30) pounds weight and a whistle or horn which can be heard distinctly at a distance of three hundred (300) yards, and shall cause the bell to be rung or whistle or horn to be blown at a distance of at least three hundred (300) yards from the place where the railroad crosses over any public highway or municipal street. The bell shall be kept ringing continuously or the whistle or horn shall be kept blowing at repeated intervals until said crossing is passed.
Miss.Code Ann. § 77-9-225 (Rev.2009). Violation of this statute constitutes negligence on the part of the railroad company, and if such negligence is the proximate cause of the injury, the railroad company is liable.
¶ 19. After hearings on the matter, the circuit court granted summary judgment in favor of Defendants, finding no genuine factual dispute with regard to the tram’s horn signal. The court held, “After reviewing the motions and the exhibits and hearing arguments of counsel, this [cjourt finds that it’s an undisputed fact that the horn was sounded [sic] upon what the event locator or black box for the train showed.”
¶ 20. We agree with the trial court’s ruling on this point. Plaintiffs presented no evidence that the train operators failed to properly sound the train’s horn. The evidence shows that the locomotive horn activated at approximately 1,283 feet prior to the train reaching the crossing, well before the 900 feet minimum requirement set forth by Mississippi Code Section 77-9-225. Thus, no issue of fact was raised as to whether .Illinois Central breached its duty in this regard.

*895
B. Proper Lookout

¶ 21. Plaintiffs claimed Hollowell and Miller failed to keep a proper lookout, contrary to testimony provided by both Hollowell and Mider. On this point, the circuit court ruled:
[T]he only issue that the court addresses on summary judgment is [whether] an indisputable fact exists and [summary judgment] should be granted as a matter of law. And at this point in time raising the issue of failure to keep a proper lookout, the [c]ourt has found no evidence presented by the Plaintiffs that would show [Defendants’ version of events] could be disputed through any other evidence. The only evidence they would submit would be an expert opinion after the fact.
Finding no evidence to support the claim that Hodowed or Mider faded to keep a proper lookout, the circuit court granted summary judgment. In their appeal to this court, the Plaintiffs state:
Although Hodowed testified he did see the county truck and that he immediately applied the emergency brake, the accuracy of his testimony is called into question by the facts as shown through Appellants’/Plaintiffs’ expert, Dr. Heath-ington. Hodowed testified that the truck was driving 50-55 mph, but as shown through the [i]ndisputible facts of speed and distance, the subject truck had to be driving significantly slower than this speed. The time-space relationship between the subject train and the subject truck, as described by Mr. Hodowed, could not have occurred. By refuting these significant portions of the Appellees’/Defendants’ testimony, the [truth] of his remaining testimony may be called into question by the trier of fact. Taking these facts in the[ir] entirety cads into question what Hodowed ready saw prior to this collision and whether the Appellees/Defendants were keeping a proper lookout.
Here, Plaintiffs’ sole support for their position that summary judgment was improperly granted is Heathington’s expert opinion. In his expert report, under a section entitled TIME-SPACE RELATIONSHIP OF THE TRAIN AND PICKUP, Heath-ington provided an analysis of the train’s movement and operation based in part on the information provided by the event-recorder printout, photographs taken on the day of the accident, measurement made by railroad personnel, and testimony from Hodowed and Mider.
¶ 22. According to Heathington, the train’s stopping distance from the point of impact with the truck was 1,720 feet. Because the emergency braking distance of 1,864 feet is greater than the 1,720-feet stopping distance, the emergency braking started approximately 144 feet in advance of the point of impact. Given that the train’s speed was 49.5 mph (72.6 feet per second), the emergency brakes were applied approximately two seconds (144 feet h- 72.6 feet per second) before the collision occurred. Heathington opined that if one gives the engineer a perception-reaction time of two seconds, which, according to Heathington, is faster than the 2.5 second criteria used by the American Association of State Highway Officials (AASHTO) for motor vehicle operators, and when one adds the two seconds of emergency braking time prior to the impact, then Hodo-wed would first have noticed the truck about four seconds before the collision. At 49.5 mph, this would have placed the front of the train approximately 290 feet from the point of impact (approximately at the center of the crossing). Heathington said that if the engineer sits approximately ten feet in back of the front of the engine, this put Hodowed about 300 feet from the point *896 of impact when he first notices the truck. At a distance of 300 feet from the center of the crossing, Hollowell could see only about 120 feet of Highway 32 to the west of the crossing due to the dense wooded area in the northwest quadrant. According to Heathington, if, as Hollowell testified, the truck was traveling at a speed of 55 mph at four seconds before impact, the truck would have been approximately 317 feet from the near rail. And the truck would not have been visible to Hollowell. Ultimately, Heathington estimated that, based on the train’s reported speed, the truck had to be traveling less than 25 mph in order for Hollowell to have seen it. And Heathington opined that, from an engineering and mathematical perspective, the time-space relationship between the train and the motor vehicle, as described by Hollowell, could not have occurred.
¶ 23. As we reiterated in Illinois Central Gulf Railroad Company v. Travis, 106 So.3d 320, 330-31 (Miss.2012), “[tjrain crews have a duty to keep a proper lookout when approaching a crossing.” (citing Hines v. Moore, 124 Miss. 500, 87 So. 1, 3 (1921)). Here, as did the trial court, we find no issue of fact with regard to Plaintiffs’ claim that Illinois Central’s train crew breached that duty. The only factual dispute raised by Heathington’s space-time relationship analysis is that the truck may not have been traveling at the speed Hollo-well estimated. Even if that could be demonstrated as fact, the evidence still indisputably shows that Illinois Central’s train crew did everything physically possible to avoid the collision as soon they observed the truck approaching the crossing with no intention of stopping. This claim is without merit.

C. Proper Control

¶ 24. Plaintiffs claimed that Hollo-well and Miller failed to operate the train under proper control. On this point, the circuit judge stated:
I believe the next [issue] is failure to maintain proper control. The Plaintiffs are raising the issue that the Defendants’ failure was to avoid a specific hazard.... They have also stated that they have raised any evidence that would establish that the Engineer Hollo-well was negligent in the operation of the train after seeing the automobile and failing to take evasive action. I believe it was argued and ... proven through the depositions ... that the train went into emergency mode....
¶ 25. Plaintiffs argue on appeal that the circuit judge erred by granting judgment on this issue. Similarly to the horn and lookout issues addressed above, the eyewitness testimony of Hollowell and Miller and the objective event-recorder data show that the emergency brake was engaged prior to impact. Plaintiffs have no evidence which would refute the data or testimony. Plaintiffs correctly submit that Mississippi courts and the United States Supreme Court have provided for recovery when a train fails to avoid an accident,[16] but Plaintiffs do not provide any evidence that the train in this case negligently failed to avoid the collision. Nothing has been submitted by Plaintiffs that shows the existence of a genuine factual dispute on this claim. And we find the circuit court properly granted summary judgment on the negligent operation claim in favor of Defendants.
Negligent Maintenance and Engineering *897 of the Mikoma Crossing[17]
¶ 26. The following analysis is based on Plaintiffs’ claims regarding the engineering and maintenance of the Mikoma crossing by Illinois Central, its business affiliates, and Illinois Central employees. Plaintiffs claim Defendants (1) failed to remove obstructive vegetation at the crossing; (2) negligently engineered the crossing, making it unreasonably dangerous; (3) failed to maintain the flasher-warning system; and (4) failed to install an adequate warning system at the crossing. This Court finds the circuit court properly granted summary judgment as to these claims.

A. Failure to Remove Obstructive Vegetation

¶27. Ordinary care requires a railroad company to meet the unusual conditions of a railroad crossing with unusual precautions, particularly where the dangerous condition results from obstruction of view, preventing a traveler from seeing an approaching train until he is dangerously close to the track.[18]
¶ 28. Plaintiffs contend that the circuit judge erred when he granted summary judgment on whether Illinois Central and its employees, Caldwell and Shoemaker, failed to remove obstructive vegetation at the Mikoma crossing. Plaintiffs assert that a factual issue exists with respect to the vegetation based on the testimony of Opal Bloodworth.[19] Opal, the sister of one of the deceased passengers, claims that she witnessed unidentified workers cutting down overgrown vegetation a few days after the accident. But, as discussed below under Issue II, her testimony would be barred, as it addresses a remedial measure under Mississippi Rule of Evidence 407. Other than Opal’s testimony, Plaintiffs argue summary judgment was not proper under the Mississippi Code Section 77-9-254 (Rev.2009). This section provides in part:
At all public highway railroad grade crossings that do not have automatic flashing lights and/or gates where vegetation would materially obstruct the view of a vehicle operator exercising reasonable care of a train approaching a grade crossing from either direction, every railroad, as is reasonably practicable, shall remove from its right-of-way which it owns or operates, such vegetation as weeds, brush, climbing vines, shrubbery and trees, for a distance of not less than three hundred (300) feet in each direction from the center line of the public road or highway....
Miss.Code Ann. § 77-9-254 (Rev.2009).
¶ 29. At the outset, Section 77-9-254 applies to crossings that do not have automatic flashing lights and/or gates, unlike the Mikoma Crossing. Nevertheless, we find that the Mississippi Highway Patrol testimony and photographs objectively show that the sight distance at the Miko-ma Crossing when the accident occurred was 458 feet. Other than Opal Blood-worth’s testimony — which does not advance an observation about sight distance — Plaintiffs seek to use Heathington’s report regarding “Available Sight Distances” at the Mikoma Crossing to dispute *898 this evidence. In his report, Heathington opined to various sight-distance deficiencies at each of the four quadrants comprising the Makoma Crossing, noting that the northwest quadrant was the quadrant involved in the accident. The problem we find with Heathington’s opinion is that he based his calculations solely on a train traveling at the speed of 79 mph.[20] As previously discussed, these are not the facts of the case, as the train was traveling at approximately 49 mph as it approached the Makoma Crossing. Under Mississippi Rule of Evidence 702, “a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise if ... (3) the witness has applied the principles and methods reliably to the facts of the case.” Heathington’s sight-distance calculations would not be admissible because they are based on irrelevant computations that would allow the fact-finder to speculate on the question of causation. Thus, there being no factual dispute to the 458 feet sight distance evidence submitted by Defendants, we find that the trial court properly granted summary judgment in favor of Defendants on this point.

B. Negligent Engineering of the Mikoma Crossing

¶ 30. This issue is a reiteration of the previous claim, and Plaintiffs rely on Heathington’s sight-distance analysis regarding the northwest quadrant of the Mi-koma Crossing. We find no merit to Plaintiffs’ claim for reasons just discussed.

C. Failure to Properly Maintain Flasher-Signal System

¶ 31. Plaintiffs contend, via expert Heathington’s testimony, that a flasher bulb on one of the two signal posts at the Makoma Crossing may have malfunctioned prior to the accident. Plaintiffs also contend that photographs taken on the day of the accident show that the signal units themselves were misaligned significantly, as the roundels were aimed along the dirt and grassy area to the right of the lane of travel instead of being sighted toward the center of the lane of travel.
¶ 32. Defendants contend that, because they complied with federal regulations on maintenance and inspection of warning devices at the Mikoma crossing, federal law preempts any state-law claim, specifically that negligent failure to maintain the flasher system created an unreasonably dangerous crossing. Defendants provide proof that inspector H.A. Dunn III, employed as a signal maintainer for Illinois Central, inspected and maintained the flasher system at the Mikoma crossing in compliance with federal regulations. Dunn’s last inspection of the flasher system was on May 9, 2005, twenty-one days prior to the collision, and the system was operating normally. Dunn learned of the subject accident shortly after it occurred. When Dunn arrived on the east side of the' crossing, Illinois Central signal maintainer Wade Holland was present, and Dunn noted that all the signals were flashing, with the exception of one bulb on the west side crossing. Dunn also noted that, as a result of the accident, the truck struck the signal mast on the west side of the crossing, which housed the signals for eastbound motorists. After the train involved in the accident at issue was released, Holland and Dunn conducted an inspection of the signal system, replaced the blown bulb, and downloaded the data recorded by the signal-system motion sensor. According to Illinois Central, the results of the in *899 spections performed by Holland and Dunn yielded the conclusion that the only problem with the crossing was the blown bulb. Following the initial inspection of the signal system, Dunn and Holland remained on site to watch additional trains pass through the crossing; the signal system functioned properly for each train.
¶ 33. Dunn testified that he was able to locate “trouble tickets” for the signal system at the Mikoma crossing in the year prior to the accident. Three trouble tickets were opened by the railroad help desk between January 2004 and the May 30, 2005, accident, dated January 24, 2004; August 23, 2004; and September 2, 2004. No signal failures were reported at the Mikoma crossing between September 2, 2004, and May 30, 2005.
¶ 34. Regardless of whether federal law controls in this instance, we find that Plaintiffs fail to make an issue of liability with the claim that Illinois Central failed to properly maintain the flasher-signal system at the Mikoma Crossing. First, Plaintiffs made no showing that Illinois Central received any notice, or should have been on notice, of a burned-out flasher bulb at the Mikoma Crossing. Three additional flasher bulbs signaled all eastbound motor-vehicle traffic of an approaching train, pri- or to and at the time of the accident. Further, we find no merit in the contention that the signal units themselves were misaligned to the point where their activation (light beams) may not have commanded the attention of the truck driver. This involves speculation on the question of proximate cause. And based on the record evidence before us, it is obvious beyond dispute that the “light beams” emitted from the signal units were plainly visible to any motorist paying the necessary attention to “things in the surrounding area.” Given this evidence, along with the evidence that the crossing’s warning bell and the train’s horn had properly sounded prior to the accident, we fail to see how a case can be made that the truck’s driver was not adequately warned of an approaching train. We find that summary judgment in favor of Defendants was properly granted on this claim.

D. Failure to Install an Adequate Signal System at the Mikoma Crossing

¶ 35. The circuit judge granted summary judgment on Plaintiffs’ claim that the warning system installed at the Mikoma crossing was inadequate after granting numerous motions in limine excluding their evidence. After granting the motions in limine, the judge held as follows:
Plaintiffs’ one remaining cause of action regards the adequacy of the warning signals installed at the Mikoma crossing. The [cjourt has previously ruled that evidence of limited sight distances at the Mikoma crossing will not be allowed at trial. The [c]ourt has also ruled that evidence of practices and procedures of other railroad companies is excluded at trial. The excluded evidence by the [cjourt described above constitutes two necessary elements for Plaintiffs’ alleged cause of action regarding adequacy of warning signals under 23 C.F.R. § 646.214(b)(3). Accordingly, Plaintiffs cannot meet the required proof for this sole remaining claim, and summary judgment is entered as to the cause of action for the adequacy of the warning signals.
But, we find the excluded evidence had no effect on summary judgment for this issue in any event, and accordingly the court could have granted summary judgment on the claim regardless of the limine motions because 23 C.F.R. § 646.214 would have only required gates (for this particular crossing) in *900 cases of “unusually restricted sight distance.” As discussed under the engineering/design claim section above, it does not seem likely that, after complying with this state’s 300 foot sight distance minimum (by having a 458 foot sight distance), a court could find the Mikoma crossing was severely restricted to the extent that it required automatic gates. And, even though Plaintiffs’ expert Heathington categorized the sight distance at Mikoma as “severely restricted,” his analysis indicated that the sight distance exceeded the statutory minimum.
¶ 36. If Plaintiffs’ expert testified that Illinois Central should have upgraded the warning system voluntarily, absent statutory or regulatory mandate to do so, this testimony would be barred. Plaintiffs refer repeatedly to Irby v. Travis, 935 So.2d 884 (Miss.2006).[21] However, Irby clearly denies any support for testimony about whether a railroad company should have voluntarily upgraded a crossing’s warning system.[22] In fact, this Court spoke directly to the testimony of Heathington, holding:
Getting right to the point on this issue, we find that it was also highly prejudicial, and reversible error, to allow Dr. Kenneth Heathington to testify that other railroads have voluntarily placed active warning devices at their grade crossings, and that Illinois Central could have upgraded the Mileston crossing by installing gates and flashing lights if it had only chosen to do so. The effect of this and other similar evidence is that it was drilled into the collective head of the jury that [the decedent] would still be alive today if Illinois Central had only installed gates and flashing lights at the Mileston crossing. That is wholly unfair, because while it is true that fatalities at railroad grade crossings would become virtually non existent if every railroad crossing in the United States had gates, flashing lights, and ringing bells, such a requirement would be unquestionably impractical.[23]
Considering Irby, applicable statutory law, and applicable federal regulations, adequacy of a warning system is not a matter of fact to be resolved by a fact-finder.[24] Adequacy itself is a matter of law defined by regulatory mínimums. To imply otherwise via expert testimony would be confusing and highly prejudicial to the jury. Absent any factual dispute on this matter, we find the circuit judge properly granted summary judgment regarding the adequacy of the warning system at the Mikoma Crossing.
¶ 37. Summary judgment is affirmed with respect to all of Plaintiffs’ claims.
II. Whether the circuit court erred in granting the Defendants’ motions in limine.
¶ 38. The standard of review regarding admission or exclusion of evidence is abuse of discretion. Herring v. Poirrier, 797 So.2d 797, 804 (Miss.2000). A trial court does not abuse its discretion by granting a motion in limine if the judge determines *901 that 1) the material evidence in question will be inadmissable at trial under the rules of evidence; and 2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury. Whittley v. City of Meridian, 530 So.2d 1341, 1344 (Miss.1988).

Motion to Limit Evidence of PosL-Acci-dent Vegetation Removal at the Crossing

¶ 39. Defendants aimed to limit evidence of alleged post-accident vegetation removal by Plaintiffs via the testimony of Bloodworth’s other sister, Pamela Bloodworth Womble. Pamela claimed she saw individuals trimming vegetation days after the accident, but could not identify them as employees of Illinois Central, or any other entity. Defendants provided evidence which directly contradicted Pamela’s statements, including police testimony and the testimony of Bloodworth’s other relatives who visited the accident site with Pamela. Further, evidence of post-accident vegetation removal would be inad-missable at trial under Mississippi Rule of Evidence 407.
¶ 40. Mississippi Rule of Evidence 407 provides:
When, after an injury or harm allegedly caused by an event, measures are taken which, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product’s design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for other purposes, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or for impeachment.
M.R.E. 407. Although Plaintiffs and Defendants hotly contest whether post-accident vegetation removal in fact occurred, the point is moot. If it had occurred, which seems unlikely given the multitude of evidence tending to show it did not, evidence of removal would be excluded under Rule 407 anyway.
¶41. The rationale underlying Rule 407, which this state adopted from the federal model, “rests on a social policy of encouraging people to take, or at least not discourag[e] them from taking, steps in furtherance of added safety.”[25] Looking to our own rule, evidence is not excluded if used to show control, ownership, or feasibility of safety measures, but in this case, Defendants have conceded control and ownership, and Plaintiffs assert no feasibility argument. In fact, Plaintiffs offer no support for their claim that would indicate Opal Bloodworth’s testimony would qualify for any Rule 407 exclusion. Plaintiffs cite no law that would support their position that Opal’s testimony was improperly excluded. Plaintiffs merely assert, “This evidence [of post-accident vegetation removal] is relevant as it relates to the issue of the condition of the vegetation in the northwest quadrant of the crossing and how it affected the visibility of motor vehicles .... ” We find Plaintiffs’ relevance argument to be bare and unpersuasive, but moreover, such testimony could speak only to a negligence or culpability claim, which plainly is excluded by Mississippi Rule of Evidence 407. This Court notes that the South Carolina Supreme Court addressed a similar matter in Carson v. CSX Transportation, Inc., 400 S.C. 221, 234-235, 734 S.E.2d 148, 155 (2012). There, the South Carolina Supreme Court held that, pursuant to Rule 407 of the South Carolina Rules of Evidence (which is essentially *902 identical to our Rule 407),[26] evidence that a railroad, in days after fatal collision, cut vegetation at railroad crossing pursuant to a railroad’s specifications could not be used to impeach railroad’s general defense that a motorist’s sight distance was adequate. Carson, 400 S.C. at 234-35, 734 S.E.2d 148.
¶ 42. Plaintiffs incorrectly suggest that Illinois Central had a burden to claim that post-accident vegetation removal was remedial, and absent doing so, Pamela Bloodworth Womble’s testimony should be admitted. Plaintiffs insinuate that Pamela’s testimony may qualify for the Rule 407 exclusion, because “Appellees/Defendants have not suggested or inferred that [post-accident vegetation removal] is [a] remedial measure in any event.” They continue, “As a matter of fact, they do not even admit this vegetation removal even occurred.” Despite the fact that Illinois Central has maintained it did not clear vegetation after the accident, it is illogical to submit that evidence or testimony that normally would be excluded would now be admitted over the language of Rule 407 because the Plaintiffs failed to address events they do not admit occurred.
¶ 43. Considering the above, we find the circuit court properly granted Illinois Central’s motion, because this evidence would be inadmissable under Rule 407.

Motions to Limit Evidence of Other Accidents at the Crossing

¶ 44. Plaintiffs assert the circuit court erred in limiting evidence of other accidents at the Mikoma crossing, to include only those which had occurred within five years prior to the instant cause of action. In this case, Plaintiffs sought to introduce evidence and testimony of the “Guest Accident” from April 3, 1992. Specifically, Heathington wanted to include the accident in his testimony and witness report. The accident was the only other accident, besides the one at issue, that any of the employees deposed could remember at the Mikoma crossing. In the Guest accident, thirteen years before the subject accident occurred, a westbound truck hit the middle of a train traveling through the Mikoma crossing.
¶ 45. While the circuit judge found that testimony by Heathington on the subject was inadmissable for being too remote in time, we find the accident also was not “substantially similar” to the instant cause of action so as to be of probative value to a jury.[27] In the Guest accident, Guest’s vehicle struck the train as it was already going through the crossing, whereas, in this case, Plaintiffs claim lack of warning and limited sight distance were the proximate cause of injury. Arguably, in the Guest accident, lack of awareness of the train was not at issue. For this reason, and given that the Guest accident was the only accident known to occur at the Mikoma crossing over the last sixty years, the circuit judge properly excluded this evidence because it would be irrelevant and therefore inad-missable and highly prejudicial.

Motion to Exclude Evidence of Near-Accidents at the Crossing

¶ 46. Plaintiffs sought to introduce evidence of three near-accidents by testimony of individuals who believed they had come close to having an accident at the Mikoma crossing. Plaintiffs also sought to introduce evidence that the Mi-koma crossing signal system malfunctioned fifteen times between 1984 and 2000.
¶ 47. During the course of discovery, Plaintiffs elicited testimony from witnesses *903 regarding alleged signal activation failures at the Mikoma crossing. Some of this testimony concerned alleged signal-activation failures from twenty years prior to the accident. Also, some of the testimony concerned alleged signal-activation failures on the east side of the crossing, whereas the subject accident involved signals on the west side of the crossing. Some of the testimony concerned signal-failure occurrences after the date of the subject accident. None of the witnesses offering testimony on the alleged signal failures ever reported them to Illinois Central.
¶ 48. The trial court granted, in part, Illinois Central’s motion in limine to exclude any such evidence, limiting the evidence of alleged signal failures to those occurring within five years of the subject accident on May 30,2005.
¶ 49. Drew Brown attested to a signal-failure incident which he said occurred in April or May 2005. The incident involved the signal system on the east side of the crossing. Brown saw a train approaching the crossing, and he noted no signal activation. Brown admitted, however, that the train was at least a half mile away, and may not have been close enough to trigger the signal system.
¶ 50. Johnny Goodwin alleged that, between 1986 and 2000, the flasher-light system at the Mikoma crossing malfunctioned by not activating for a sufficient length of time prior to the train’s arrival at the crossing; the signal system would activate for a train, but not provide enough warning time. Between 1986 and 2000, three incidents occurred, to the best of Goodwin’s knowledge, in which the signal allegedly did not activate for an appropriate length of time. Goodwin also described other occurrences between 1986 and 2000, when the signals activated when there was no train in sight. Goodwin did not witness such a malfunction after the year 2000, and he never reported any alleged signal failure or malfunction to the railroad within this time frame.
¶ 51. Emily Flautt alleged one incident in which the signal system failed to provide her with adequate warning of a train’s approach, which occurred after the accident, sometime in June 2005. Flautt said she did not notice the train coming from the north until after she was on the crossing. She said the lights did not activate before she traveled across the crossing, but she noticed the lights flashing when she was on the crossing and estimated that the signals had activated less than ten seconds before the train entered the crossing.
¶ 52. Illinois Central submits that the evidence of any alleged signal-system failures described above is irrelevant, and any probative value of these alleged signal malfunctions is greatly outweighed by the danger of unfair prejudice. Illinois Central argues that, in order for it to be held liable for failure to maintain the signal system at the Mikoma crossing, it is not enough simply to allege that the signal system failed at the time of the accident. Plaintiffs in this instance were required to show that Illinois Central had either actual or constructive knowledge that the signal system was malfunctioning.
¶ 53. “The rule has been long established in Mississippi that evidence of prior accidents may be introduced at trial to show two things: (1) the existence of a [defective or] dangerous condition; and, (2) the defendant’s notice or knowledge [thereof]_” Richardson v. Norfolk Southern Ry. Co., 923 So.2d 1002, 1009-10 (Miss.2006) (citation omitted); see also M.R.E. 404(b). Evidence of prior accidents, however, shall be admitted only upon a showing of substantial similarity of conditions. Richardson, 923 So.2d at 1010. Further, this Court also has made clear *904 that admissible evidence of other accidents may not be too remote in time from the accident in issue. Id. (citing Illinois Cent. R.R. v. Williams, 242 Miss. 586, 135 So.2d 831, 839 (1961)).
¶ 54. This Court has found that “other accident” evidence occurring within nine months of an accident at issue was not too remote in time for the evidence to be admissible. Williams, 135 So.2d at 839. This Court also has found “other accident” evidence occurring over time periods less than one year close enough in time to be admissible. Barrett v. Parker, 757 So.2d 182, 188-89 (Miss.2000) (one year); see also S.H. Kress & Co. v. Markline, 117 Miss. 37, 77 So. 858, 864 (1918) (two years). This Court has not found a case that addresses whether “other accident” evidence occurring beyond three years or more is close enough in time to be admissible. As the Richardson Court opined, conditions at the scene obviously change over time. Richardson, 923 So.2d at 1010.
¶ 55. Here, though, the issue does not actually involve “other accident” evidence. Rather, it concerns allegations of a faulty signal system at the Mikoma crossing, which is problematic for Plaintiffs. Again, Brown claimed there was no signal activation on one occasion in April or May 2005; but Brown also admitted that the train may have been too far away at the time to activate it. Goodwin did not witness any alleged signal malfunction within the five-year period leading up to the accident at issue. And Flautt alleged that sometime in June 2005, after the accident, the signals did not timely activate. None of this evidence appears to relate any instance of a malfunctioning bulb or misaligned signal units.
¶ 56. Defendants correctly cited this Court’s standard on near-accidents. In Sawyer v. Illinois Cent. R.R. Co., 606 So.2d 1069 (Miss.1992), this Court held:
We have no doubt there are cases where evidence of near-accidents may be admissible for the purpose of showing the dangerous character of a place and to show notice thereof to the person in control. On the other hand, the fact of a near miss, and for that matter, a hit, in and of itself proves very little and indeed may be quite prejudicial. The fact that an accident almost occurs at a particular location does not necessarily imply any fault or neglect on the part of the person in control of the premises. The point has an important context. Railroad crossing are dangerous places, and they are no less so that we encounter the danger with less frequency than in other days.... Accordingly, to be admissible, prior-accident — and certainly near-miss testimony — must be carefully qualified.[28]
Given the above standard, and that Plaintiffs provide no showing that the near-misses were “substantially similar” so as to qualify for admission, we find no abuse of discretion in the trial court’s decision to exclude the testimony of Goodwin, Flautt, and Brown.

Motion to Exclude Evidence Pursuant to 23 U.S.C. § m

¶ 57. The circuit court reserved ruling on whether to exclude evidence of a meeting among the Tallahatchie County Board of Supervisors, the Mississippi Department of Transportation, and Illinois Central about safety-signal malfunctions and upgrades at the Mikoma Crossing pri- or to the subject accident. Although, here, the circuit judge reserved ruling on exclusions of evidence of the meetings until trial, this evidence would be subject to the *905 evidential^ privilege of 23 U.S.C. 409. Section 409 provides:
Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railroad-highway crossings, pursuant to sections 130, 144, and 148 of this title of for the purpose of this title or for the purpose of developing any highway safety construction improvement.
And, even though the circuit court reserved ruling on this matter, the evidence would be inadmissable, in addition to being prejudicial to the jury, based on Section 409 above.

Motion to Limit Opinions of Kenneth Heathington

¶ 58. On this motion, the circuit judge ruled:
I don’t like motions in limine because I don’t know how the testimony is going to come out, and you’re asking me to predetermine before a witness is going to testify to what he’s going to say and what I will sustain or not. I’m going to allow the Plaintiffs’ expert Mr. Heath-ington ... to testify. Now what he says and how he says it there’s going to be some control over it ... he cannot get on the stand and testify as to legal conclusions ... and I will not allow him to testify to what other railroad companies can or cannot do. He can testify as to what the legal requirements are, either Federal and/or state. And I believe there were some issues possibly raised about him testifying as to when the horns and flashing and vegetation and all those issues, and I’m going to ask the attorneys to get together ... to work it out beforehand. If you can’t, bring it up to me before trial and we’ll resolve it as to what-because I don’t know what he’s going to testify to....
¶ 59. Excluding practices of other railroads was not manifest error, as supported by this Court’s opinion in Irby v. Travis, 935 So.2d 884 (Miss.2006).
III. Whether the circuit court erred in denying Plaintiffs’ right to have a jury decide their claims.
¶ 60. We are always mindful of a party’s constitutional right to a trial by jury. Miss. Const, art. 3, § 31 (1890). But, when the moving party is entitled to judgment as a matter of law because the nonmoving party has failed to demonstrate any genuine issue of material fact regarding its claim, there is no violation of that right. Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983). For the aforementioned reasons, that is the case here. This issue is without merit.
CONCLUSION
¶ 61. This Court finds that the circuit court properly granted each motion made in limine to exclude and/or limit Plaintiffs’ evidence from admission at trial. And we find the circuit court properly granted summary judgment in favor of Defendants with respect to all of Plaintiffs’ operational claims against Illinois Central, Hollowell, and Miller, and that it properly granted summary judgment in favor of Defendants with regard to all of Plaintiffs’ engineering/maintenance claims against Illinois Central, Caldwell, and Shoemaker. Accordingly, we affirm the circuit court’s Rule 54(b) order granting summary judgment in favor of the Defendants.
¶ 62. ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: DISMISSED AS MOOT.
*906 WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR. LAMAR, J., NOT PARTICIPATING.

. The wrongful-death beneficiaries of Blood-worth, Tallant, and Richardson (who were passengers in truck) also sued the estate of Hilson (the driver of the truck) for his negligence in the operation of the vehicle. Hil-son's estate filed a cross-claim against Illinois Central and its employees mirroring the same claims alleged by the other wrongful-death beneficiaries. That matter is not before us.

. Including named defendants Shoemaker, Caldwell, B & P Enterprises, Prewett Enterprises, and unnamed defendants, John Does 1-5.

. The court opined:
Plaintiffs’ one remaining cause of action regards the adequacy of the warning signals installed at the Mikoma crossing. The [c]ourt has previously ruled that evidence of limited sight distances at the Mikoma crossing will not be allowed at trial. The [cjourt has also ruled that evidence of practices and procedures of other railroad companies is excluded at trial. The excluded evidence by the [c]ourt described above constitutes two necessary elements for Plaintiffs' alleged cause of action regarding adequacy of warning signals under 23 C.F.R. § 646.214(b)(3). Accordingly, Plaintiffs cannot meet the required proof for this sole remaining claim, and summary judgment is entered as to the cause of action for the adequacy of the warning signals.

. Miss. R. Civ. P. 54.

. Specifically, Defendants’ fifth motion in li-mine, to exclude evidence of signal malfunctions, was granted in part and denied in part, as it included evidence of malfunctions within five years and excluded evidence dated earlier. On Defendants’ sixth motion, to exclude evidence pursuant to 23 U.S.C. § 409, the court reserved ruling on whether evidence of meetings between the Tallahatchie County Board of Supervisors, the Mississippi Department of Transportation (MDOT), and Illinois Central specific to the Mikoma crossing could be admitted. The circuit court denied in part and granted in part regarding Defendant's seventh motion in limine to exclude the testimony of Plaintiffs' expert Kenneth Wayne Heathington to prohibit him from making legal conclusions.

. Miss. R. Civ. P. 56.

. Kilhullen v. Kan. City S. Ry., 8 So.3d 168, 174 (Miss.2009).

. Id. at 174-75 (quoting Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss.1993)).

. Miss. R. Civ. P. 56 cmt.

. Miss. R. Civ. P. 56.

. After ruling on Defendants’ motions in li-mine, the court granted summary judgment with respect to the adequacy of the signal system.

. This section addresses the motion for summary judgment on operational claims filed by Illinois Central, Hollowell, and Miller.

. The complaint also claims the collision was the result of "... other acts of negligence as will be shown at the trial of this cause," but this Court finds this statement is too vague to be actionable.

. An event recorder is an on-board computer processor that records details of the train's operation reflected in binary code, such as the train's speed, horn and bell activation, and distance traveled. An event recorder is similar to an airplane’s black box. The majority of locomotives are required to have an "in-service event recorder" on board. See 49 C.F.R. § 229.135 (2011).

. Miss.Code Ann. § 77-9-225 (Rev.2009).

. See CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993); Cameron v. Wall, No. 2:09-CV-234- *897 KS-MTP, 2010 WL 554076 (S.D.Miss. Feb 7, 2011).

.This section addresses the motion for summary judgment on engineering and maintenance claims filed by Illinois Central, Caldwell, and Shoemaker.

. New Orleans & Northeastern R. Co. v. Lewis, 214 Miss. 163, 58 So.2d 486, 489 (1952).

. Opal Bloodworth and Pamela Bloodworth Womble, female relatives of the deceased Christopher Allan Bloodworth, both presented testimony in this proceeding.

. According to the record, this is the maximum speed allowed for passenger trains at this particular track section.

. Specifically, Plaintiffs rely on Justice Graves’s dissent in this case.

. Irby, 935 So.2d at 896-897.

. Id.

. We note that determining site distance itself can be a matter of fact for resolution by a jury. For example, if it were unclear how many feet of sight distance existed at a railroad crossing, a jury could weigh the evidence and determine if there was more or less than 300 feet of sight distance. But a jury could never determine that any sight distance exceeding 300 feet was inadequate.

. Fed.R.Evid. 407, advisory committee's note.

. See S.C. R. Evidence 407.

. See Mitcham v. Illinois Cent. Gulf R.R., 515 So.2d 852 (Miss.1987).

. Sawyer, 606 So.2d at 1075-1076.